# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE (WILMINGTON)

|  |  |  |
|---|---|---|
| | X | |
| MARTIN MARCUS, Individually and on Behalf of All others Similarly Situated, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. 1:05-cv-081 (GMS) |
| | : | |
| | : | |
| ASTRAZENECA PLC, TOM MCKILLOP, JONATHAN SYMONDS, HAKAN MOGREN, and PERCY BARNEVIK, Defendants. | : | |
| | : | |
| | : | |
| | X | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE LANG GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**
Seth D. Rigrodsky (#3147)
Ralph Sianni (#4151)
919 N. Market Street, Suite 411
Wilmington, Delaware 19801
(302) 984-0597
--and--
**MILBERG WEISS BERSHAD
& SCHULMAN LLP**
Steven G. Schulman
Peter E. Seidman
Sharon M. Lee
One Pennsylvania Plaza - 49th Floor
New York, NY 10119
(212) 594-5300

*Attorneys for Plaintiff:*

*Proposed Lead Counsel*

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
320 East 39th Street
New York, NY 10016
(212) 983-9330

Dated: March 28, 2005

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1

INTRODUCTION.…………………………………………………………………… ...1

SUMMARY OF FACTS ..............................................................................................3

ARGUMENT: POINT I  THE LANG GROUP SHOULD BE APPOINTED
              LEAD PLANITFF ...............................................................5

    A. The Procedure Required By The PSLRA .........................................................5

    B. The Lang Group Satisfies The "Lead Plaintiff" Requirements
       Of The Exchange Act And Should Be Appointed Lead Plaintiff......................6

      1. The Lang Group Has Timely Moved for Appointment as
         Lead Plaintiff ...................................................................................6

      2. The Lang Group Has The Requisite Financial Interest In
         The Relief Sought By The Class...................................................7

      3. The Lang Group Otherwise Satisfies Rule 23 .............................................7

     POINT II:  THE LANG GROUP'S SELECTION OF LEAD COUNSEL
            SHOULD BE APPROVED ................................................................9

CONCLUSION.…………………………………………………………………………..10

# TABLE OF AUTHORITIES

## CASES

*Bell v. Ascendant Solutions, Inc.,*
No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850 (N.D. Tex. Apr. 17,
2002) ........................................................................................................8

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001)................................................................6, 7

*Fields v. Biomatrix, Inc.,*
198 F.R.D. 451 (D.N.J. 2000)..........................................................7, 8, 9

*Fischler v. Amsouth Bancorporation,*
No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6,
1997) ........................................................................................................8

*Greebel v. FTP Software, Inc.,*
939 F. Supp. 57 (D. Mass. 1996) .............................................................5

*Lax v. First Merchs. Acceptance Corp.,*
No. 97C2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)...........1, 5, 8

*Marcus v. AstraZeneca PLC,*
No. 05-CV-81 (D. Del. filed Feb. 14, 2005)............................................3

*In re Microstrategy Sec. Litig.,*
110 F. Supp. 2d 427 (E.D. Va. 2000) .....................................................1

*In re Oxford Health Plans,*
182 F.R.D. 42 (S.D.N.Y. July 15, 1998)..................................................8

*Priest v. Zayre Corp.,*
118 F.R.D. 552 (D. Mass. 1988)..............................................................8

*Tyler v. AstraZeneca PLC,*
No. 1:05-CV-10167 (D. Mass. filed Jan. 27, 2005)..................................1

*Wetzel v. Liberty Mutual Insurance Co,*
508 F.2d 239 (3d Cir. 1975)....................................................................9

## STATUTES

17 C.F.R. § 240.10b-5 ............................................................................................................2

15 U.S.C. § 78j(b) ...............................................................................................................1

15 U.S.C. § 78t(a) ...............................................................................................................1

15 U.S.C. § 78u-4 ........................................................................................................ passim

Fed. R. Civ. P. 23 ............................................................................................................2, 6

## PRELIMINARY STATEMENT

Class members Anthony Lang, individually and on behalf of Hunglang Investment Group, and Charles R. Beyerlein (collectively, the "Lang Group") respectfully submits this Memorandum of Law in support of their motion for: (1) appointment as Lead Plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, and (2) approval of their selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") as Lead Counsel, pursuant to the PSLRA.

## INTRODUCTION

Presently pending in this District is one class action lawsuit (the "Action")[1] on behalf of all persons who purchased or otherwise acquired the securities of AstraZeneca PLC ("AstraZeneca"), including AstraZeneca's American Depository Receipts ("ADRs"), between April 2, 2003 and October 11, 2004 (the "Class Period").[2] This Action is brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§

---

[1] The Lang Group is aware of at least three related securities class actions pending in the Southern District of New York and the District of Massachusetts captioned *Tyler v. AstraZeneca PLC*, No. 1:05-CV-10167 (D. Mass. filed Jan. 27, 2005) (the "*Tyler* Action"), *Jaroslawicz v. AstraZeneca, PLC*, No. 1:05-CV-2688 (S.D.N.Y. filed Mar. 8, 2005) (the "*Jaroslawicz* Action"), and *Elliot v. AstraZeneca PLC*, No. 1:05-CV-2969 (S.D.N.Y. filed Mar. 18, 2005) (the "*Elliot* Action"). The Lang Group has filed a Notice of Filing of the instant motion in each of these related actions.

[2] The *Tyler, Jaroslawicz,* and *Elliot* Actions and the above-captioned *Marcus* Action allege differing class periods. For the purpose of this motion, the Lang Group has used the longer of the class periods, that is, April 2, 2003 to October 11, 2004, as alleged in the *Tyler* Action, to demonstrate that it will most adequately represent the entire class of purchasers of AstraZeneca securities that was affected by defendants' materially false and misleading statements and/or omissions. Such differences will not affect consolidation of the related actions if or when the actions are transferred to one district, as this issue can be resolved when the appointed lead plaintiff files a consolidated complaint. *See, e.g., In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 431-32 (E.D. Va. 2000) (consolidating actions alleging different class periods and naming different defendants); *Lax v. First Merchs. Acceptance Corp.*, No. 97C2715, 1997 U.S. Dist. LEXIS 11866, at *4 (N.D. Ill. Aug. 6, 1997) (same).

78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R.
§ 240.10b-5. Defendants are AstraZeneca and certain of AstraZeneca's officers and directors.

Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether
to consolidate related actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). In this case, only one action,
the above-captioned *Marcus* Action, is pending in this District, and therefore, the Court should
proceed in appointing as Lead Plaintiff the movant or group of movants with the largest financial
interest in the litigation of those seeking such appointment and which otherwise satisfy the
relevant requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.*

Pursuant to the PSLRA, the Court should appoint as Lead Plaintiff the movant or group
of movants that have demonstrated the "largest financial interest in the litigation" that also meets
the typicality and adequacy prongs of Fed. R. Civ. P. 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). As
demonstrated herein, Movants, with a combined financial interest of $11,468.56, have, to the
best of their or their counsel's knowledge, the largest financial interest in this litigation of any
plaintiff or lead plaintiff movant, are typical of the class they seek to represent and will more
than adequately protect the interest of class members. *See id.*

Pursuant to the PSLRA, the Lead Plaintiff selects the Lead Counsel subject to Court
approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants have selected the law firm of Milberg
Weiss to serve as Lead Counsel. Milberg Weiss has extensive experience successfully litigating
securities class actions and possesses the resources necessary to vigorously pursue this litigation
on behalf of the class. For the reasons summarized herein and discussed more fully below,
Movants' motion should be approved in its entirety.

## SUMMARY OF FACTS[3]

During the Class Period, AstraZeneca was engaged in late-stage clinical trials of an oral anticoagulant, Exanta ®, also generically known as ximelagatran, to study the prevention and treatment of blood clots. Specifically, the clinical trials focused on three indications: 1) the prevention of venous thromboembolism ("VTE") in patients undergoing knee replacement surgery; 2) long-term secondary prevention of VTE after standard treatment for acute VTE; and 3) the prevention of stroke and other thromboembolic complications associated with atrial fibrillation. Exanta was regarded as a potential breakthrough oral anticoagulant that would be less burdensome than warfarin, the standard oral therapy for patients at risk of thrombosis. Throughout the Class Period, AstraZeneca touted the purportedly positive results from the Exanta trials, claiming that the results were indicative of a safe and effective new direct oral anticoagulant.

In December 2003, after the Company submitted a New Drug Application ("NDA") to the Food and Drug Administration ("FDA") for approval to market Exanta for the three indications, defendants made numerous positive public statements about the status of the NDA, and repeatedly commented that FDA approval of the application would positively and materially impact the Company's financial results. Unbeknownst to the Class, however, defendants' statements were materially false and misleading because they failed to disclose material adverse events in the trials and the likelihood that the FDA would reject the NDA on that basis.

The truth began to emerge on September 9, 2004 when the FDA posted on its website briefing documents in preparation for its meeting on September 10, 2004, when the Company's NDA was scheduled to be reviewed. The briefing documents revealed previously undisclosed adverse events in the Exanta studies, including materially higher levels of liver enzymes in

---

[3] These facts are derived from the allegations in the complaint captioned *Marcus v. AstraZeneca PLC,* No. 05-CV-81 (D. Del. filed Feb. 14, 2005) (the "*Marcus* Action").

3

patients treated with Exanta than previously reported by defendants, that there were increased risks of coronary artery disease and heart attacks in patients taking Exanta versus warfarin, and that the Company had left too wide a margin in showing that Exanta was equivalent to warfarin. In reaction to the publication of the briefing documents, the price of AstraZeneca ADRs dropped sharply, falling $2.65 per share, or 5.6%, from its previous trading day's closing price of $47.05, to close at $44.40 per share on September 9, 2004.

On September 10, 2004, at the FDA meeting, numerous other alarming safety and efficacy issues in the Exanta trials were raised, including that certain studies failed to demonstrate any clinical or statistical differences between Exanta and warfarin; that the comparison of Exanta to warfarin in short-term indications was unfair; that there were higher incidences of coronary artery disease adverse events, myocardial infarction, major bleeding, and severe liver injury, including fatalities, in patients treated with Exanta than with warfarin. In addition, the FDA found that AstraZeneca's Risk Minimization Action Plan failed to address the possible risks of delayed hepatoxicity after short-term use of Exanta or the risk of myocardial infarction. On October 8, 2004, Company issued a press release announcing that it received an Action letter from the FDA rejecting the Exanta NDA. In reaction to this news, the price of AstraZeneca ADRs fell again, dropping $0.12 per share from its closing price of $38.80 on October 7, 2004, to close at $38.68 on October 8, 2004.

## ARGUMENT

## POINT I

## THE LANG GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The Procedure Required By The PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff

in each private action arising under the Exchange Act that is brought as a plaintiff class action

pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class within 20

days of filing the action, informing class members of their right to file a motion for appointment

as lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i).  Here, the relevant notice was published on

*Business Wire* on January 27, 2005.[4]  Within 60 days after publication of the notice, any person

or group of persons who are members of the proposed class may apply to the Court to be

appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.

15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice, the Court

shall consider any motion made by a class member and shall appoint as lead plaintiff the member

or members of the class that the Court determines to be most capable of adequately representing

the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B).  In determining the "most adequate

plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any
> private action arising under this Act is the person or group of persons that

---

[4]        A copy of this notice is annexed as Exhibit A to the Declaration of Ralph Sianni ("Sianni Decl.").
The *Business Wire* has been recognized as suitable vehicles for meeting the statutory requirement that notice be
published "in a widely circulated national business-oriented publication or wire services." *Greebel v. FTP Software,
Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *see also Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

(aa) has either filed the complaint or made a motion in response to a notice. . .

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). As discussed below, the Lang Group has complied with the procedural prerequisites of the PSLRA, has demonstrated what, to the best of its knowledge, is the largest financial interest in the litigation and meets the relevant requirements of Fed. R. Civ. P. 23, and should be appointed as the Lead Plaintiff.

**B.    The Lang Group Satisfies The "Lead Plaintiff" Requirements Of The Exchange Act And Should Be Appointed Lead Plaintiff**

**1.    The Lang Group Has Timely Moved for Appointment as Lead Plaintiff**

All class members who are interested in moving for the appointment of Lead Plaintiff in this matter must do so by March 28, 2005. 15 U.S.C. § 78u-4(a)(3)(A) and (B). Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, (*i.e.*, within 60 days after the notice published on January 27, 2005), the Lang Group hereby move this Court in a timely manner to be appointed Lead Plaintiff on behalf of all members of the Class.

Movants have each signed and filed a certification stating that they have reviewed the allegations of a complaint and are willing to serve as a representative party on behalf of the Class, pursuant to 15 U.S.C. § 78u-4(a)(2). *See* Sianni Decl. Exhibit B. In addition, Movants have selected and retained competent counsel to represent them and the Class. *See* Sianni Decl. Exhibit E (Firm Resume of Milberg Weiss as proposed Lead Counsel). Accordingly, Movants have satisfied the procedural requirements of 15 U.S.C. § 78u-4(a)(3)(B).

### 2.    The Lang Group Has The Requisite Financial Interest In The Relief Sought By The Class

Pursuant to the PSLRA, identification of the most adequate plaintiff, "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.* 264 F.3d at 262 *quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). During the Class Period, as evidenced by the certification signed by each member of the Lang Group (*see* Sianni Decl. Exhibit B) and analysis of its transactions in AstraZeneca securities (*see* Sianni Decl. Exhibit C), the Lang Group has sustained total losses of $11,468.56. Upon information and belief, the Lang Group's financial interest in this matter is the largest of any competing lead plaintiff movant. Therefore, the Lang Group is the movant with the "largest financial interest in the relief sought by the class" 15 U.S.C. § 78u-4(a)(3)(B)(iii). *See Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000) (appointing movant with the largest financial interest as lead plaintiff.).

### 3.    The Lang Group Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See also In re Cendant Corp. Litig.* 264 F.3d at 262. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Of these four prerequisites, only two — typicality and adequacy — directly address the personal characteristics of the lead plaintiff movants. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer

examination of the remaining requirements until a class certification motion is filed. *See Fields,* 198 F.R.D. at 455 ("[O]f the four prerequisites to class certification, the focus is only on the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements."); *Lax v. First Merchants,* 1997 U.S. Dist. LEXIS 11866, at \*20; *Fischler v. Amsouth Bancorporation,* No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at \*7-8 (M.D. Fla. Feb. 6, 1997).

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Fields* 198 F.R.D. at 456-457 ("The typicality requirement is construed liberally as long as there is no express conflict between the class representative and the class."); *In re Oxford Health Plans,* 182 F.R.D. 42, 50 (S.D.N.Y. July 15, 1998). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between its claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted).

The Lang Group satisfies the typicality requirement of Rule 23 because, just like all other class members, its members: (1) transacted in AstraZeneca securities during the Class Period at distorted prices; and (2) suffered damages thereby. Thus, Movants' claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events. *See Bell v. Ascendant Solutions, Inc.*, No. 3:01-CV-0166-P, 2002 U.S. Dist. LEXIS 6850 at \*18 (N.D. Tex. Apr. 17, 2002) ("The Court is aware of no differences among the class members that would substantially alter the proof required for one member's claims versus

8

another's. Thus . . .the claims of the [movants] are typical of those of the purported class members.").

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." Pursuant to the PSLRA, a movant is adequate if: (1) the movant is qualified, experienced, and generally able to conduct the proposed litigation; and (2) the movant does not have interests antagonistic to those of the class. *Fields* 198 F.R.D. at 457 *citing Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975).

Movants will more than adequately represent the interests of the Class. First, there is no conflict between the interests of Movants and those of the other members of the Class. Finally, as demonstrated below, Movants' proposed Lead Counsel, Milberg Weiss is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, Movants *prima facie* satisfy the typicality and adequacy requirements of Rule 23 for the purposes of this motion and should be appointed as Lead Plaintiff.

## POINT II

## THE LANG GROUP'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. In that regard, the Lang Group, as the presumptively most adequate plaintiff, has selected Milberg Weiss to serve as Lead Counsel, subject to this Court's approval. Milberg Weiss possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Sianni Decl. Exhibit D. As is demonstrated in its firm resume, Milberg Weiss has been appointed as lead or co-lead counsel in landmark, precedent setting class actions. *See id.* Accordingly, the Lang Group's selection of Lead Counsel should be approved.

## CONCLUSION

For the foregoing reasons, the Lang Group satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). The Lang Group respectfully requests that this Court: (1) consolidate the actions; (2) appoint it as Lead Plaintiff pursuant to §21D(a)(3)(B); and (3) approve its selection of Milberg Weiss as Lead Counsel.

DATED: March 28, 2005

Respectfully submitted,

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**

By ___/s/ Ralph N. Sianni_____
       Seth D. Rigrodsky (#3147)
       Ralph N. Sianni (#4151)
919 N. Market Street, Suite 411
Wilmington, Delaware 19801
(302) 984-0597

--and--

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**
Steven G. Schulman
Peter E. Seidman
Sharon M. Lee
One Pennsylvania Plaza - 49th Floor
New York, NY 10119
(212) 594-5300

***Proposed Lead Counsel***

FARUQI & FARUQI, LLP
Nadeem Faruqi
320 East 39th Street
New York, NY 10016
(212) 983-9330 – phone
(212) 983-9331 – fax

***Attorneys for Plaintiff***