# EXHIBIT D

# LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP ("Lerach Coughlin") is a 150-lawyer law firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle (*www.lerachlaw.com*). Lerach Coughlin is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. Lerach Coughlin's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class action lawsuits. As a result, Lerach Coughlin attorneys have been responsible for recoveries of more than $25 billion.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to Lerach Coughlin from federal, state and local law enforcement and regulatory agencies, including dozens of former federal prosecutors. Lerach Coughlin also includes more than 25 former federal (circuit and district) and state judicial clerks.

Lerach Coughlin currently represents more institutional investors in securities and corporate litigation – public and multi-employer funds – than any other firm in the United States.

**William S. Lerach** is widely recognized as one of the leading securities lawyers in the United States. Lerach founded the West Coast operations of Lerach Coughlin's predecessor firm– Milberg Weiss – almost 30 years ago. He has prosecuted hundreds of securities class and stockholder derivative actions, resulting in recoveries of billions of dollars. Lerach and the firm are involved in many of the largest and highest-profile securities suits in recent years, including *Enron, Dynegy*, *AOL-TimeWarner*, and *WorldCom*.

**Patrick J. Coughlin** has been lead counsel in several major securities matters, including *In re Apple Computer Securities Litigation*, where he obtained a $100 million verdict. Prior to joining Lerach Coughlin, Coughlin was a federal prosecutor in Washington, D.C. and San Diego handling complex white collar fraud matters. He helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown*, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman.* Coughlin now heads up the prosecution of the high profile *HealthSouth* and *Qwest* cases. Coughlin has handled and resolved a number of large securities cases involving such companies as 3Com, Boeing, IDB Communications Group, Unocal, Sybase, Connor, Media Vision, ADAC, Sunrise Medical, Valence, Sierra Tucson, and Merisel. In addition, Coughlin spearheaded actions against the tobacco industry resulting in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the Cities and Counties of California – unique in the nation.

**John J. Stoia, Jr.** has prosecuted numerous nationwide complex securities class actions, including *In re American Continental Corp./Lincoln Savings & Loan Sec. Litig.*, MDL 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Stoia was a major part of the plaintiffs' trial team which resulted in verdicts against Keating and his co-defendants in excess of $3 billion and recoveries of over $240 million. Stoia has been involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s, including, among others, Prudential, New York Life, Transamerica

Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. Because of Stoia's efforts, victimized policyholders have recovered over $7 billion. Stoia also successfully litigated numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century, including serving as lead counsel in *McNeil v. American General Life Insurance and Accident Company*, the first major settlement involving discrimination claims ($234 million recovery). Stoia has since resolved other race-based insurance cases, including *Brown v. United Life Insurance Company*, *Morris v. Life Insurance Company of Georgia* and *Thompson v. Metropolitan Life*. In late summer 2004, Stoia filed the first complaint alleging kickbacks and rigged bidding in the insurance industry, and was hired by California Insurance Commissioner John Garamendi to represent the citizens of California in suits alleging these practices.

**Paul J. Geller** has served as Lead or Co-Lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($ 8.5 million); *Prison Realty Trust*; total combined recovery of over $120 million); *Intermedia Corporation* ($38 million). Mr. Geller is currently one of the Court-appointed Lead Counsel in cases involving the alleged manipulation of the asset value of some of the nations largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ. 10071 (S.D.N.Y.); *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.) and *In Re Eaton Vance Securities Litigation*, Case No. C.A. No. 01-10911 (D. Mass.).

Mr. Geller has also successfully represented consumers in class-action litigation. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement) and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

**Samuel H. Rudman** served in the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney, where he was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled several white collar criminal defense matters.

In 1995, Mr. Rudman joined Milberg Weiss, where he was one of the youngest lawyers ever to be made a partner at the firm and was responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed an expertise in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**Darren J. Robbins** has extensive experience in federal and state securities litigation, serving as lead counsel in the *In re Dollar General Securities Litigation, In re Prison Realty Securities Litigation*, and *In re Hanover Compressor Securities Litigation*. Robbins currently represents numerous pension funds in state and federal courts across the country and specializes in the structuring of corporate governance enhancements in connection with the resolution of shareholder class and derivative litigations. Robbins was recently recognized as *California Lawyer* Attorney of the Year for 2003 as a result of his participation as lead counsel in *Hanover Compressor*, where plaintiffs recovered approximately $85 million and obtained numerous groundbreaking corporate governance changes, including direct shareholder nomination of Board members and the mandatory rotation of the company's outside audit firm.

## PRACTICE AREAS AND CURRENT CASES

### Securities

As recent corporate scandals clearly demonstrate, it has become all-too-common for companies and their executives to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true values. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Lerach Coughlin is the leader in the fight to provide investors with relief from corporate securities fraud. Lerach Coughlin utilizes a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases on behalf of large institutional investors.

The firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Lerach Coughlin attorneys to lead roles in hundreds of complex class action securities and other cases. In the securities area alone, Lerach Coughlin attorneys have been responsible for a number of outstanding recoveries on behalf of investors which, in the aggregate, exceed $25 billion. Currently, Lerach Coughlin is lead or named counsel in approximately 500 securities class action or large institutional investor cases including:

- Enron Securities class action
- AOL/Time Warner individual institutional investor private actions
- Cisco Systems Securities class action
- Coke Securities class action
- Oracle Securities class action
- WorldCom Bond individual institutional investor private actions
- HealthSouth Securities class action

One of the reasons for Lerach Coughlin's dominance stems from Lerach Coughlin's unparalleled dedication of resources towards investor recovery. For example, Lerach Coughlin has approximately 125 attorneys dedicated to investigating and prosecuting securities fraud class action and derivative cases on

behalf of hundreds of institutional investors. In addition to ample human resources, Lerach Coughlin is also well capitalized to meet the demands of prosecuting complex cases.

Lerach Coughlin's securities department includes dozens of former federal and state prosecutors and trial attorneys. Lerach Coughlin's securities practice is also strengthened by the existence of a strong Appellate Department – whose collective work has resulted in numerous legal precedents. Lerach Coughlin's securities department also utilizes an extensive group of in-house experts, economic and damage analysts, investigators, and forensic accountants to aid in the prosecution of complex securities issues.

While obtaining recoveries for our clients is our primary focus, Lerach Coughlin attorneys have also been at the forefront of securities fraud **prevention**. Lerach Coughlin prevention efforts are focused on creating important changes in corporate governance either as part of the global settlements of derivative and class cases or through court orders. Recent cases in which such changes were made include: *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.*, No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings); *In re Sprint Shareholder Litigation*, No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis); *Teachers' Retirement System of Louisiana v. Occidental Petroleum Corp.*, CV No. BC185009 (Cal. Super. Ct. 1998) (as part of the settlement, corporate governance changes were made to the composition of the company's Board of Directors, the company's Nominating Committee, Compensation Committee and Audit Committee), and *Barry v. E*Trade Group, Inc.*, No. CIV419804 (Cal. Super. Ct., San Mateo County) (in connection with settlement of derivative suit, excessive compensation of CEO eliminated (reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant and elimination of future stock option grants) and important governance enhancements obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee). Through these efforts, Lerach Coughlin has been able to create substantial shareholder guarantees to prevent future securities fraud.

The firm works exclusively with noted corporate governance expert Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

**Insurance**

Lerach Coughlin stands at the forefront in protecting the rights of defrauded individuals in the insurance and healthcare industries. Lerach Coughlin is focused on stopping fraudulent and improper sales practices and recouping losses for victimized policyowners.

Lerach Coughlin attorneys have spearheaded dozens of cases against the life insurance industry on behalf of policyowners with permanent life insurance policies (including universal life, whole life, and interest-sensitive whole life policies) and unfair and deceptive sales practices during the 1980s and 1990s. These cases are based upon insurance companies misrepresenting how policies will perform and whether premiums will "vanish." Purchasers were victims of a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new, less-valuable policy. Our lawyers are responsible for such groundbreaking decisions as *In re: The Prudential Insurance Company of America Sales Practices Litigation,* 962 F. Supp. 450 (D. N.J. 1997), *In re: Great Southern Life Insurance Company Sales Practices Litigation,* 192 F.R.D. 212 (N.D. Tex. 2000), and *Massachusetts Mutual Life Insurance Company v. The Superior Court of San Diego County,* 97 Cal. App. 4th 1282 (4th Dist. 2002). To date, Lerach Coughlin attorneys have recouped over $7 billion on behalf of victimized policyholders against the world's largest insurance companies, including Metropolitan Life, Prudential, Manulife, Principal Mutual, Pacific Life, Transamerica, Allianz, and many others.

Lerach Coughlin attorneys have been at the forefront of discrimination cases against life insurance companies for their alleged practice of intentionally charging African-Americans and other minorities more for life insurance. These lawsuits relate to the sale and administration of low face-amount life insurance policies commonly known as "industrial," "burial," "home service," or "debit" policies. African-Americans and other minorities were allegedly charged more for the same level of life insurance or were offered lower policy benefits than provided to Caucasians. Our attorneys have recovered over $400 million for African-American and other minority class members as redress for the civil rights abuses they were subjected to, including such landmark settlements as *McNeil v. American Gen. Life & Acc. Ins. Co.,* No. 3-99-1157 (M.D. Tenn. 2000), *Thompson v. Metropolitan Life Insurance Company,* 216 F.R.D. 55 (S.D. N.Y. 2003), and *Williams v. United Insurance Company of America,* Civil Action No. 01-920 (Jefferson Cty. Ala. 2002). Our lawyers are also responsible for important decisions in this area such as *In The Matter of: Monumental Life Insurance Company, Industrial Life Insurance Litigation,* 343 F.3d 331 (5th Cir. 2003), *Moore v. Liberty National Insurance Company,* 267 F.3d 1209 (11th Cir. 2001), and *Carnegie v. Mutual Savings Life Insurance Company,* No. CV-99-S-3292 NE, 2002 U.S. Dist. LEXIS 21396 (N.D. Ala. 2002).

Lerach Coughlin attorneys are actively involved in litigation against major, nationwide auto insurers for alleged abuses in their claims-handling procedures. These cases challenge an alleged practice of replacing certain damaged automobile crash parts with cheaper, allegedly inferior, non-original equipment manufacturer parts, known as imitation parts.

California Insurance Commissioner John Garamendi recently retained Lerach Coughlin to represent the citizens of the state of California to assist in breaking up a long-standing pattern of illicit deals and commissions paid by insurance companies to companies like Universal Life Resources ("ULR") and Marsh,

who advanced the insurance companies' products while pretending to perform objective brokerage services for employers who hired them to assemble and place employee benefits. ULR immediately entered into a consent decree, agreeing to stop the unlawful practices, fully disclose its income and commission arrangements, and to fully assist in the state of California's investigation into these widespread practices.

Given their familiarity with the fraudulent and unfair business practices employed in the insurance industry, our attorneys are experts at rooting out facially neutral, yet discriminatory business behaviors. Our redlining cases seek to curb abuses in the underwriting practices used in determining whether to issue and at what price to charge minorities for homeowner and automobile insurance policies.

## Antitrust

Lerach Coughlin's antitrust practice focuses on representing plaintiffs in complex litigation, such as small businesses and individuals who have been the victims of price-fixing, unfair trade practices, or other anticompetitive conduct. The firm has taken a leading role in many of the largest federal price-fixing and price discrimination cases throughout the United States.

For example, Lerach Coughlin attorneys played a lead role in *In re NASDAQ Market-Makers Antitrust Litigation*, MDL 1023 (S.D.N.Y.), serving as court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three-and-one-half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

*See In re NASDAQ Market-Makers Antitrust Litig.*, MDL 1023, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

One of the most significant opinions in the case was Judge Sweet's decision to certify the class of millions of investors over the strenuous objections of defendants. *In re NASDAQ Market-Makers Antitrust Litigation*, 169 F.R.D. 493 (S.D.N.Y. 1996). Oral argument on behalf of plaintiffs on the class certification motion was presented by Leonard B. Simon, Of Counsel to Lerach Coughlin.

Other cases include:

- *Hall v. NCAA* (Restricted Earnings Coach Antitrust Litigation), No. 94-2392-KHV (D. Kan.). Lerach Coughlin attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the NCAA (National Collegiate Athletic Association) illegally fixed their compensation by instituting the "restricted earnings coach" rule. On

May 4, 1998, the jury returned verdicts in favor of the three classes for more than $67 million. Trial counsel included Lerach Coughlin attorney Bonny E. Sweeney.

- *In re Disposable Contact Lens Antitrust Litigation,* MDL 1030 (M.D. Fl.). Lerach Coughlin attorneys served as co-lead counsel for a class of contact lens wearers alleging that the principal manufacturers of disposable contact lenses conspired with the leadership of the American Optometric Association and other eye care practitioners to boycott alternative channels of contact lens distribution, including pharmacies and mail order suppliers. The case settled for $89 million five weeks into a jury trial, shortly after plaintiffs' trial counsel, including Lerach Coughlin attorney Christopher M. Burke, defeated defendants' motion for a directed verdict.

- *Microsoft I-V Cases,* J.C.C.P. No. 4106 (San Francisco Super. Ct.). Lerach Coughlin attorneys served on the executive committee in these consolidated cases, in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets. In a settlement recently approved by the court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

Current cases include:

- *In re Currency Conversion Antitrust Litigation,* MDL 1409 (S.D.N.Y.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this multi-district litigation, in which a class of general purpose VISA and MasterCard cardholders allege that VISA and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to U.S. cardholders. Plaintiffs also allege that defendants failed to adequately disclose the fee in violation of federal law. Discovery continues, and the plaintiffs' motion for class certification is fully briefed.

- *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.* (the *Carbon Fiber Antitrust Litigation*), No. CV-99-7796 (C.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this consolidated class action, in which a class of purchasers alleges that the major producers of carbon fiber fixed the price of carbon fiber from 1993 to 1999. The trial court denied defendants' motions to dismiss and granted plaintiffs' motion to certify the class, and the Ninth Circuit Court of Appeals has rejected defendants' challenge to the court's class certification order. Discovery is continuing.

- *In re Carbon Black Antitrust Litigation,* MDL 1543 (D. Mass.). Lerach Coughlin attorneys serve as co-lead counsel for a class of businesses that allege that the major producers of carbon black unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks, and other products, from 1999 through the present. The parties are currently engaged in discovery.

- *In re DRAM Antitrust Litigation,* MDL 1486 (N.D. Ca.). Lerach Coughlin attorneys serve on the executive committee in this multi-district class action, in which a class of purchasers of high density low-cost-per-bit, random access memory chips, known as DRAM, allege that the leading manufactures of semiconductor products fixed the price of DRAM from the fall of 2001 through at least the end of June 2002. Lerach Coughlin attorneys took the lead in briefing and successfully opposing defendant's motion to dismiss, which was denied. The parties are engaged in discovery.

- *In re Medical Waste Services Antitrust Litigation,* MDL 1546 (D. Utah). Lerach Coughlin attorneys are co-lead counsel in this multi-district antitrust class action litigation involving two separate cases. In the first (the *Tri-State Class Action*), plaintiffs allege defendants illegally conspired to allocate customers and territories in the market for the collection, transportation and disposal of medical waste in three mountain states. In the second case (the *Stoll Action*), the firm is co-lead counsel for a California class of plaintiffs who allege that Stericycle, the largest provider of medical waste collection and disposal services in the United States, unlawfully monopolized the market for these services in California. Discovery is ongoing, and plaintiffs expect to move for certification of the class in July 2004.

- *In re Microsoft Antitrust Litigation.* Lerach Coughlin attorneys have served as lead counsel, co-lead counsel and on the executive committees of more than 15 indirect purchaser actions against Microsoft brought in both state and federal courts alleging Microsoft illegally exercised its monopoly power in the operating system, word processing and spreadsheet markets. Plaintiffs successfully defeated motions to dismiss, challenges to class certification and motions for summary judgment in many state cases. Plaintiffs also engaged in a massive discovery effort in order to defeat Microsoft's challenges regarding its unlawful acts, and to prepare for trials in California and Minnesota, both of which ultimately resolved before the cases reached a jury. In many states, the parties are currently in the process of finalizing settlements and/or achieving court approval in settlements which provide an unprecedented result for indirect purchaser class members.

- *The California Wholesale Electricity Antitrust Litigation,* 02-CV-990 (S.D. Cal.). Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this litigation, which alleges buyers and sellers in markets operated by the California Power Exchange ("PX") and California ISO ("ISO") manipulated markets during the period May 1, 2000 to June 19, 2001. The culmination of several years of litigation, review of company documents and investigation have led to the determination of widespread market manipulation of the California and Western energy markets during 2000 and 2001. The findings show the trading strategies and withholding of power, employed by Enron and other companies, were undertaken in an effort to manipulate the California energy market which led to increased energy prices for consumers. Plaintiffs recently reached a landmark settlement in the litigation with the Williams Companies worth an estimated $400 million dollars. The case is currently before the Ninth Circuit Court of Appeals awaiting oral argument on several issues.

**Consumer**

The consumer attorneys at Lerach Coughlin represent plaintiffs nationwide in a variety of complex representative and consumer class actions. Lerach Coughlin attorneys have taken a leading role in many of the largest state and federal consumer fraud, human rights, environmental and public health, and tobacco-related cases throughout the United States. Lerach Coughlin is also actively involved in numerous cases relating to the financial services industry, pursuing claims on behalf of individuals victimized by abusive mortgage lending practices, including violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 *et seq.*, market timing violations in connection with the sale of mutual fund and variable annuities, and deceptive consumer-credit lending practices in violation of the Truth In Lending Act, 15 U.S.C. §1601 *et seq.*

Current cases include:

- *Cellphone Termination Fee Cases.* Lerach Coughlin attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California. The plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California law, designed to unfairly tether consumers to long-term contracts and prevent customers from changing their wireless service providers.

- *Tenet Healthcare Cases.* Lerach Coughlin attorneys are co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. Lerach Coughlin attorneys represent uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy," that resulted in price gouging of the uninsured.

- *Ocwen Financial Corporation.* Lerach Coughlin attorneys represent plaintiffs alleging unfair business practices in Ocwen's servicing of residential mortgage loans. Plaintiffs claim that Ocwen has engaged in a scheme to charge vulnerable borrowers unwarranted and unlawful fees, including late penalty fees, fees associated with hazard insurance, attorneys' fees and fees associated with the unnecessary and wrongful preparation of default and foreclosure proceedings.

- *AT&T Wireless Coverage Maps.* Lerach Coughlin attorneys represent consumers in a Los Angeles action that alleges false and misleading advertising by AT&T Wireless. Plaintiffs claim that AT&T Wireless's coverage maps are deceptive because they fail to disclose that defendants' service area is riddled with coverage gaps and holes. Plaintiffs seek injunctive relief from the court requiring AT&T Wireless to publish accurate coverage maps indicating where consumers are actually able to place wireless telephone calls throughout the Los Angeles region.

Prior cases include:

- *Schwartz v. Visa*. After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States. In *Schwartz v. Visa Int'l, et al.*, No. 822404-4 (Cal. Super. Ct., Alameda County), California consumers sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the court ordered full disclosure of the hidden fee.

- *In re Lifescan, Inc. Consumer Litigation*, No. CV-98-20321-JF (N.D. Cal.). Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics. The Lifescan settlement was noted by the district court for the Northern District of California as providing "exceptional results" for members of the class.

## Human Rights, Labor Practices and Public Policy

Lerach Coughlin attorneys have a long tradition of representing the victims of wrongdoing, ranging from unfair labor practices to violation of human rights. These include:

- *Does I, et al. v. The Gap, Inc., et al.*, No. 01 0031 (D. Northern Mariana Islands). In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: *Does I, et al. v. Advance Textile Corp., et al.*, No. 99 0002 (D. Northern Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act – and *UNITE, et al. v. The Gap, Inc., et al.*, No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- *Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The court rejected defense contentions that any misconduct was protected by the First Amendment. The court found the heightened

constitutional protection afforded to noncommercial speech was inappropriate in such a circumstance.

- *The Cintas Litigation.* Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

Shareholder derivative litigation brought by Lerach Coughlin also sometimes involves anti-union activities, including:

- *Southern Pacific/Overnite.* A shareholder action stemming from several hundred million dollars in loss of value in the Company due to systematic violations by Overnite of U.S. labor laws.

- *Massey Energy.* A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million dollar penalties.

- *Crown Petroleum.* A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

Lerach Coughlin attorneys also represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime exempt employees. Currently, Lerach Coughlin attorneys represent CINTAS workers with similar claims of violation of federal and state labor laws.

**Environment & Public Health**

Lerach Coughlin attorneys have also represented plaintiffs in class actions related to environmental law. Lerach Coughlin attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center ("NEDLC") as *amici curiae* in a federal suit designed to uphold the state and federal use of project labor agreements ("PLAs"). The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds. Our Amici Brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large scale construction projects.

Attorneys with Lerach Coughlin have been involved in several other significant environmental cases including:

- *Public Citizen v. US DOT.* Lerach Coughlin represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry, in a challenge to a decision by the Bush Administration to lift a congressionally-imposed "moratorium" on cross border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act and, further, that the Administration did not first complete a comprehensive environmental impact analysis as

required by the National Environmental Policy Act. The suit was dismissed at the Supreme Court, the Court holding that because the DOT lacked discretion to prevent cross-border trucking, an environmental assessment was not required.

- *Sierra Club v. AK Steel.* Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, RCRA and the Clean Water Act.

- *MTBE Litigation.* Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- *Exxon Valdez.* Brought on behalf of fisherman and of Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- *Avilla Beach.* A citizens suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avilla Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act, and state laws such as California Proposition 65, exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage and be forced to pay for reparations and to come into compliance with existing laws.

Prominent cases litigated by Lerach Coughlin attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

**The Fight Against Big Tobacco**

Lerach Coughlin attorneys have led the fight against Big Tobacco since 1991. As an example, Lerach Coughlin attorneys filed the case that helped get rid of Joe Camel representing various public and private plaintiffs, including the State of Arkansas; the general public in California; the cities of San Francisco, Los Angeles, and Birmingham; 14 counties in California; and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Lerach Coughlin attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

**Pro Bono**

Lerach Coughlin attorneys have a long history of engaging in *pro bono* cases and have been recently recognized for their demonstrated commitment to providing *pro bono* services to the poor and disenfranchised. In 2003, Lerach Coughlin attorneys Eric Isaacson, Bonny Sweeney, and Amber Eck (from the San Diego office of the then Milberg Weiss) were nominated for the prestigious 2003 California State Bar President's *Pro Bono* Law Firm of the Year award, based in large part on their efforts with the ACLU in *Sanchez v. County of San Diego*. The San Diego office received a commendation from the state bar president

for its "dedication to the provision of *pro bono* legal services to the poor and for the significant contribution [the firm] made to extending legal services to underserved communities." In recommending the firm for the award, Carl Poirot, of the San Diego Volunteer Lawyer Program, praised the firm for its "extraordinary efforts" in the case, stating that the "legal team generously gave of their time in the vigorous representation of a class of individuals who clearly do not have the financial resources nor wherewithal to retain legal counsel. The County's questionable conduct would have gone unchallenged but for the intervention" of the legal team.

*Sanchez* is a class action brought on behalf of welfare applicants against the County of San Diego seeking an injunction requiring the County to discontinue its "Project 100%" program. Under Project 100%, investigators from the San Diego D.A.'s office, Public Assistance Fraud Division, enter and search the home of every person who applies for welfare benefits, even though there is no suspicion of fraud or wrongdoing – and despite the fact that every individual is required to undergo an extensive application process with numerous verifications. Plaintiffs contend that these searches by law-enforcement officers, performed without cause or suspicion, violate state and federal statutes and the Fourth Amendment of the U.S. Constitution.

The court certified a class of all present and future applicants for CalWORKs cash aid and food stamps in San Diego County who are subject to a search of their home under Project 100%. Defendants have since admitted that the use of home visits to determine eligibility for food stamps violates California state regulations and has agreed to settle these claims. Although defendants were granted summary judgment on the remaining claims, plaintiffs are currently in the process of filing an appeal with the Ninth Circuit Court of Appeals and are optimistic about the prospects for success there. Due to the substantial number of hours dedicated to this important case, lead attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were awarded the SDVLP Distinguished Service Award.

This San Diego office was also named as one of three finalists for the 1999 Pro Bono Law Firm of the Year award by the SDVLP, based in part for its work on the *Badua v. City of San Diego* case. *Badua* was a case brought on behalf of Jenny Badua against the City of San Diego. After working for the City for 15 years, she was placed on Long Term Disability ("LTD") leave due to severe manic depression. Under the City's LTD Plan, which is similar to many other LTD plans, individuals with physical disabilities receive benefits until age 65 or longer, but individuals with mental disabilities receive benefits for only two years. We alleged that this differential treatment of persons with mental disabilities violated the Americans with Disabilities Act and federal and state disability nondiscrimination statutes. Unfortunately, after three years of working on the case, the Ninth Circuit Court of Appeals issued an opinion upholding the constitutionality of an LTD plan nearly identical to the one at issue, and plaintiffs settled the case for a nominal award to the plaintiff. However, the Disability Rights Education & Defense Fund and the ACLU commended our efforts and described this as one of the most important issues of the year.

Our co-counsel, Linda Kilb of the DREDF, said in recommending us for the award: "The talent, effort and commitment of [Lerach Coughlin attorneys have] been invaluable, and it is difficult to imagine how the case could proceed without them. DREDF is enormously appreciative of [Lerach Coughlin attorneys'] continuing role in this case, and of SDVLP's assistance in finding us co-counsel of this caliber."

## JUDICIAL COMMENDATIONS

Lerach Coughlin attorneys, working under the former Milberg Weiss mantel, have been commended by countless judges all over the country for the quality of representation in class action lawsuits.

When Judge Harmon appointed Lerach Coughlin attorneys as lead counsel for Enron securities purchasers, she commented:

> In reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court has found that the submissions of [Lerach Coughlin attorneys] stand out in the breadth and depth of its research and insight. Furthermore, Mr. Lerach has justifiably "beat his own drum" in demonstrating the role his firm has played thus far in zealously prosecuting this litigation on Plaintiffs' behalf.

*See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002). More recently, in *Stanley v. Safeskin Corp.*, No. 99 CV 454-BTM (S.D. Cal. May 25, 2004), where Lerach Coughlin obtained $55 million for the class of investors, Judge Moskowitz stated:

> I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

In a November 9, 1998 order approving settlements totaling over $1.027 billion, the court in *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), commented about Lerach Coughlin attorneys including Len Simon that:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties in this action achieved.

In *Transamerica*, Judge Danielson made it a point to comment on the professionalism of Lerach Coughlin attorneys:

> It would be hard to imagine what question I could come up with that I haven't already seen the information that I needed in the submissions that have been made to this Court. I can't remember anything so thoroughly and professionally handled in the 20-some odd years that I've been involved in the law. It is interesting to see law practiced honorably. And I think all of the lawyers who have involved themselves in this case can be very proud of their profession.

*See Gordon v. Transamerica Occidental Life Ins. Co.*, Hearing Transcript dated June 26, 1997, at 39:3-12.

Similarly, in *Prudential,* in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, Judge Wolin observed:

> [T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable.... Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court. Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

*See In re Prudential Ins. Co. Sales Practices Litig.*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), *vacated on other grounds*, 148 F.3d 283 (3d Cir. 1998). Lerach Coughlin attorneys were co-lead counsel in this litigation. At the Fairness Hearing in *Prudential*, Judge Wolin stated that "there is *no doubt* that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise." *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (emphasis added).

In approving a $100 million settlement in *In re Prudential Securities Limited Partnerships Litig.*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), for which Lerach Coughlin attorneys, acting under the Milberg Weiss firm name, were part of the lead counsel, Judge Pollack noted that he had "the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and [was] impressed with the quality of plaintiffs' class counsel." In his opinion on class certification, Judge Chesler elaborated that:

> The firm of Milberg Weiss Bershad Hynes & Lerach LLP, which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the *Prudential* case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the Milberg firm has helped to secure for the plaintiff classes in both this case and the *Prudential* case are a testament to counsel's vigorous pursuit of the class interests.

*See Roy v. The Independent Order of Foresters*, Civ. No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999).

At the Settlement Hearing in the *Chipcom* litigation, for which Lerach Coughlin attorneys were counsel, Judge Woodlock remarked:

> [I]t seems to me that the level of legal services, the quality of legal services, the attention to the case on behalf of the plaintiffs, and ultimately plaintiffs' class, was really very high quality and ought to be recognized by an appropriately high percentage figure here.
>
> Of course, I disagree on the merits of the case. That is not, however, to say that I disagree with the quality of the lawyering or disregarded the quality of the lawyering or thought that the quality of the lawyering was not at the highest level. To the contrary, I thought it was at the highest level and that ought also to be reflected here.

*See Nappo v. Chipcom Corp.*, CA-95-11114-WD (D. Mass.), Settlement Hearing Transcript dated June 26, 1997, at 13-14.

# NOTABLE CLIENTS

## Public Fund Clients

- Alaska Permanent Fund Corporation.

- Alaska State Pension Investment Board.

- California Public Employees' Retirement System.

- California State Teachers' Retirement System.

- City of Birmingham Retirement and Relief System (Ala.).

- Teachers' Retirement System of the State of Illinois, Illinois Municipal Retirement Fund, Illinois State Board of Investment.

- Los Angeles County Employees Retirement Association (LACERA).

- Maine State Retirement System.

- The Maryland-National Capital Park & Planning Commission Employees' Retirement System.

- Milwaukee Employees' Retirement System.

- Minnesota State Board of Investment.

- New Hampshire Retirement System.

- Pompano Beach Police & Firefighters Retirement System.

- The Regents of the University of California.

- State Universities Retirement System of Illinois.

- State of Wisconsin Investment Board.

- Tennessee Consolidated Retirement System.

- Washington State Investment Board.

- Wayne County Employees' Retirement System.

- West Virginia Investment Management Board.

## Multi-Employer Clients

- **Alaska Electrical Pension Fund.**

- **Alaska Hotel & Restaurant Employees Pension Trust Fund.**

- **Alaska Ironworkers Pension Trust.**

- **Alaska Laborers Employers Retirement Fund.**

- **Alaska U.F.C.W. Pension Trust.**

- **Chemical Valley Pension Fund of West Virginia.**

- **Carpenters Health & Welfare Fund of Philadelphia & Vicinity.**

- **Carpenters Pension Fund of Baltimore, Maryland.**

- **Carpenters Pension Fund of Illinois.**

- **Carpenters Pension & Annuity Fund of Philadelphia & Vicinity.**

- **Southwest Carpenters Pension Trust (f/k/a Carpenters Pension Trust for Southern California).**

- **Central States, Southeast and Southwest Areas Pension Fund.**

- **Construction Industry and Carpenters Joint Pension Trust for Southern Nevada.**

- **Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund.**

- **Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds.**

- **UNITE Family of Funds.**

- **1199 SEIU Greater New York Pension Fund.**

- **Massachusetts State Carpenters Pension Fund.**

- **Massachusetts State Guaranteed Annuity Fund.**

- **New England Health Care Employees Pension Fund.**

- **PACE Industry Union-Management Pension Fund.**

- **Rocky Mountain UFCW Unions & Employers Pension Plan.**

- **SEIU Staff Fund.**

- **Southern California Lathing Industry Pension Fund**

- **United Brotherhood of Carpenters Pension Fund**