# EXHIBIT A

LEXSEE 2000 U.S. DIST. LEXIS 5481

**LABORERS LOCAL 1298 PENSION FUND, on behalf of itself and all others similarly situated, Plaintiff 5. CAMPBELL SOUP COMPANY, DALE F. MORRISON and BASIL L. ANDERSON, Defendants**

CIVIL ACTION NO. 00-152 (JEI) (CONSOLIDATED LEAD CASE)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2000 U.S. Dist. LEXIS 5481; Fed. Sec. L. Rep. (CCH) P90,963

April 24, 2000, Decided

**DISPOSITION:** [*1] Donald DeValle, Daryle Green, and Denise L. Nappier, Treasurer of the State of Connecticut as Trustee for the Connecticut Retirement Plans and Trust Funds appointed as lead plaintiffs.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The court, pursuant to the Private Securities Litigation Reform Act (PSLRA), *15 U.S.C.S. § 78u-4* et seq., appointed lead plaintiff in class action suit based on claims arising under §§ 10(b), 20(a) of the Securities Exchange Act, *15 U.S.C.S. §§ 78j*, t, et seq., and Rule 10b-5 promulgated thereunder.

**OVERVIEW:** In a class action complaint under the Securities Exchange Act, *15 U.S.C.S. §§ 78j*, t, et seq., the court appointed, pursuant to the Private Securities Litigation Reform Act (PSLRA), *15 U.S.C.S. § 78u-4* et seq., as lead co-lead plaintiffs, plaintiff Connecticut State Treasurer and plaintiff shareholders who had purchased defendant corporation's stock as assets in their respective pension plans. The court determined that plaintiff state had the largest financial interest in the suit, and the interest of plaintiff shareholders, combined, was the second largest. The court further ordered appointed plaintiffs to select lead counsel in the matter and to file a motion addressing various factors in the selection.

**OUTCOME:** The court appointed plaintiff state and plaintiff individual shareholders as co-lead plaintiffs in a class action against defendants in a suit under the Securities and Exchange Act.

**LexisNexis(R) Headnotes**

**COUNSEL:** Samuel P. Sporn, Esq., Joel P. Laitman, Esq., Schoengold & Sporn, P.C., New York, NY, Co-Counsel for Laborers Local 1298 Pension Fund.

Nicholas Stevens, Esq., Starr, Gern, Davison & Rubin, Roseland, NJ, Co-Counsel for Laborers Local 1298 Pension Fund and Trust Advisors Equity Plus, LLC.

Peter L. Masnik, Esq., Kalikman & Masnik, Haddonfield, NJ, Co-Counsel for Maureen Rocks; Mike Proto; Bernard Koehne; Tom Bintliff; Donald R. Devalle; and Daryle Green.

Stuart J. Guber, Esq., Sherrie R. Savett, Esq., Berger & Montague, P.C., Philadelphia, PA, Co-Counsel for Maureen Rocks, Mike Proto, Donald DeValle and Daryle Green.

Thomas G. Shapiro, Esq., Theodore M. Hess-Mahan, Shapiro Haber & Urmy LLP, Richard J. Vita, Esq., Law Offices of Richard J. Vita, Boston, MA, Co-Counsel for Maureen Rocks.

Stephen J. Toll, Esq., Andrew Friedman, Esq., Cohen Milstein Hausfeld & Toll, Washington, DC, Co-Counsel for Mike Proto.

Andrew M. Schatz, Esq., Schatz & Nobel, P.C., Hartford, CT, Co-Counsel [*2] for Trust Advisors Equity Plus, LLC; Denise L. Nappier.

William J. Pinilis, Esq., Morristown, NJ, Co-Counsel for Robert Heinen.

Case 1:05-cv-00081-GMS   Document 13-2   Filed 04/11/2005   Page 3 of 8

2000 U.S. Dist. LEXIS 5481, *; Fed. Sec. L. Rep. (CCH) P90,963

Page 2

Steven E. Cauley, Esq., Law Offices of Steven E. Cauley, P.A., Little Rock, AR, Co-Counsel for Robert Heinen.

Joseph J. DePalma, Esq., Lite DePalma Greenberg & Rivas, LLC, Newark, NJ, Co-Counsel for Joanna Lerner and Michael Joseph Maguire.

Stuart L. Berman, Esq., Schiffrin & Barroway, LLP, Bala Cynwyd, PA, Co-Counsel for Joanna Lerner.

Samuel H. Rudman, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Co-Counsel for Michael Joseph Maguire.

Richard D. Kranich, Esq., Law Offices of Richard D. Kranich, New York, NY, Co-Counsel for Michael Joseph Maguire.

Faith R. Greenfield, Esq., Chief Litigation Counsel, Campbell Soup Company, Camden, NJ, Co-Counsel for Campbell Soup Company, Dale F. Morrison and Basil L. Anderson.

Alan E. Kraus, Esq., Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, NJ, Co-Counsel for Campbell Soup Company, Dale F. Morrison and Basil L. Anderson.

Paul C. Saunders, Esq., Max R. Shulman, Esq., Cravath, Swaine & Moore, New York, NY, Co-Counsel for Campbell Soup Company, Dale [*3] F. Morrison and Basil L. Anderson.

**JUDGES:** JOSEPH E. IRENAS, U.S.D.J.

**OPINIONBY:** JOSEPH E. IRENAS

**OPINION:**

### ORDER APPOINTING LEAD PLAINTIFF

IRENAS, District Judge:

It appearing that:

> 1. Ten class action complaints have been filed against Campbell Soup Company and two of its executives on claims arising under § § 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), *15 U.S.C. § 78j* and t, et seq., and Rule 10b-5 promulgated thereunder. The facts alleged in each complaint are identical. n1 By a series of orders issued by this Court, all the complaints have been consolidated into a single action.

> n1 Indeed, all the complaints are practically identical copies of the first complaint, including misspellings.

> 2. Pursuant to the Private Securities Litigation Reform Act ("PSLRA"), *15 U.S.C § 78u-4* et seq., the first plaintiff to file, Laborers Local 1298 Pension Fund ("Laborers Local"), published a notice on PR Newswire [*4] on January 11, 2000, advising the public of the pendency and nature of the suit and of the right of any eligible shareholder to serve as lead plaintiff. *15 U.S.C. § 78u-4(a)(3)(A)(i)*. Three motions were made pursuant to *15 U.S.C. § 78u-4*(a)(3)(B) for the appointment of lead plaintiff and the approval of the counsel representing each moving party. *15 U.S.C. § 78u-4*(a)(3)(B)(v). The moving parties were Laborers Local, represented by Schoengold & Sporn, who had filed the initial complaint; Donald DeValle and Daryle Green, represented by Berger & Montague; and the Treasurer of the State of Connecticut, represented by Schatz & Nobel, P.C.. n2

> n2 Neither Daryle Green nor the State of Connecticut were named plaintiffs in any of the ten original complaints. Berger and Montague, P.C. did file a complaint on behalf of Donald DeValle, and Schatz and Nobel, P.C. filed a complaint on behalf of Trust Advisors Equity Plus, LLC.

> 3. A lead [*5] plaintiff must be a member of the purported class, but need not be a named plaintiff. The PSLRA creates a "presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that . . . has the largest financial interest in the relief sought by the class . . . and . . . otherwise satisfies the requirements of *Rule 23 of the Federal*

Case 1:05-cv-00081-GMS    Document 13-2    Filed 04/11/2005    Page 4 of 8

Page 3
2000 U.S. Dist. LEXIS 5481, *; Fed. Sec. L. Rep. (CCH) P90,963

Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The Act does not define whether the concept of "largest financial interest" should be viewed in terms of absolute dollars or as a percentage of a plaintiff's net worth.

4. Laborers Local asserts that it purchased 6,300 shares during the class period (November 18, 1997 to January 8, 1999), all of which were subsequently sold for a total loss of $ 100,494.00. n3 The State of Connecticut, through its pension funds, purchased 168,300 shares during the class period and asserts that its losses exceed $ 1,000,000. As of April 6, 2000, Connecticut still holds 77,800 shares of Campbell Soup. Donald DeValle and Daryle Green jointly seek to serve as lead plaintiff. DeValle purchased 5,302.2 shares during the class [*6] period which represents all the assets in his 401(k) Plan. Green purchased 5,742 shares which amounts to approximately 56% of the balance in his 401(k). Both men still retain all the shares purchased during the class period. Combined they assert a loss of about $ 131,000.

n3 After publishing notice of the pending class action, counsel for the Laborers Local received inquiries from 73 shareholders who purchased 19,330 shares during the class period and claimed losses of $ 194,933.31. None of these individuals are proposed as lead plaintiffs.

5. In absolute terms the State of Connecticut has, by far, the largest claim, while the combined claim of Green and DeValle n4 is a distant second. However, Connecticut's loss is a drop in the bucket compared to the billions of dollars in pension funds managed by the State Treasurer. For Green and DeValle their shares represent a substantial portion of their retirement funds. n5

n4 Although the PSLRA seems to contemplate a "group of persons" as a possible lead plaintiff, this Court agrees with those decisions which suggest that aggregating a group of unrelated individuals to create a plaintiff with the "largest financial interest" is contrary to the spirit of the law which seeks to replace lawyer driven litigation with client controlled litigation. *Sakhrani v. Brightpoint, 78 F. Supp. 2d 845, 850-54 (S. D. Ind. 1999)* ("Selecting as 'lead plaintiff' a large group of investors who have the largest aggregate losses but who have nothing in common with one another beyond their investment is not an appropriate interpretation of the term 'group' in the PSLRA."). However, DeValle and Green, both of whom are former Campbell employees have a commonality of interest which makes aggregating their claims appropriate. [*7]

n5 Although the cases grant the Court some discretion in selecting the lead plaintiff, no case has specifically interpreted the phrase "largest financial interest" in relative rather than absolute terms. Many courts have adopted a four-prong test to evaluate the size of a party's financial interest in the litigation. See, e.g., *Tarica v. McDermott International Inc., 2000 U.S. Dist. LEXIS 5031, No. 99-3831, 2000 WL 377817*, at *4(E. D. La., April 13, 2000)(the largest financial interest is determined by considering "(1) number of shares purchased; (2) number of net shares purchased; (3) total net funds expended by plaintiffs during class period; and (4) approximate losses plaintiffs suffered.").

6. The PSLRA requires that the person or group of persons selected as lead plaintiff "otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure.*" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) Although the level of scrutiny at this stage of the proceeding is less intensive than undertaken on a motion to certify the class, the Court is satisfied that "(1) the class [*8] is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties [all of the moving plaintiffs] are typical of the claims or defenses of the class, and (4) the representative parties [all of the moving plaintiffs] will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)*. In addition,

Case 1:05-cv-00081-GMS   Document 13-2   Filed 04/11/2005   Page 5 of 8

2000 U.S. Dist. LEXIS 5481, *; Fed. Sec. L. Rep. (CCH) P90,963

Page 4

it seems clear that the questions of law or fact common to members of the class predominate over issues applying to individual class members, and a class action is superior to other methods of fairly and efficiently adjudicating the suit. *Fed. R. Civ. P. 23(b)*.

7. The presumption in favor of the person or group of persons with the largest financial interest can be rebutted by proof that such plaintiff (i) will not adequately protect the interest of the class or (ii) is subject to unique defenses which would render such plaintiff incapable of adequately representing the class. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) and (bb)*. One party suggested that the indictment of Connecticut's previous State Treasurer for malfeasance in office [*9] might create some unique defense against the current occupant of that office. However, there is nothing in the record to suggest that Connecticut's purchase of Campbell stock was involved in the wrongdoing which led to the indictment, or that the indictment would interfere with the current Treasurer's ability to conduct the current litigation. It was also suggested that DeValle and Green, as former Campbell employees who purchased their shares for IRAs, might face some defenses not applicable to other plaintiffs. Nothing in the record suggests that these employees were in the upper echelon of management or otherwise had specialized knowledge which might have put them on notice of the practices alleged in the Complaint.

8. The PSLRA delegates to the party selected as lead plaintiff the task of selecting counsel, subject to the approval of the court. *15 U.S.C. § 78u-4(a)(3)(B)(v)*. At the present moment, not surprisingly, each party vying for appointment as lead plaintiff wants its own counsel to handle the case. All three firms, Schatz & Nobel, P.C., Schoengold & Sporn, P.C. and Berger & Montague, P.C., are experienced class action lawyers with extensive [*10] experience in the field. There is some question as to whether the Schatz firm and the Schoengold firm are large enough to handle this litigation solely with their own personnel. n6 At the oral argument all three law firms indicated an intention to parcel out the work in some undetermined fashion to the other two law firms. The Court has serious reservations about this approach. If a truly private litigant was interviewing potential counsel for possible retention in an important case, the client would not generally expect that the lawyer ultimately appointed would turn around and dole out the work to the other firms who had competed for the case. Not only would such action suggest the possibility of collusion among counsel, but it would likely be inefficient and would undercut the client's desire to select the best lawyers for the job. Thus, this practice is inconsistent with the expressed intent of the PSLRA to make the attorney-client relationship in class actions similar to that in ordinary litigation.

n6 Apparently Schatz & Nobel consists of four lawyers while Schoengold & Sporn has six. Berger & Montague is considerably larger and appears to have the staffing necessary to handle the matter.

[*11]

9. It is the intention of the Court to appoint DeValle, Green and the Treasurer of the State of Connecticut as co-lead plaintiffs pursuant to the PSLRA. Connecticut has the largest financial interest in the suit, and the interest of DeValle and Green, combined, is the second largest. The Court also considers it desirable to have both an institutional investor, like Connecticut, and individual investors, like DeValle and Green, included as lead plaintiffs since each may bring a unique perspective to the litigation. n7 Of course, the Court reserves "the right to alter this structure at any time and for any reason, and will do so if it finds that the progress of the litigation is being delayed . . . or if the structure established proves detrimental, in any way, to the best interests of the class." *In re Oxford Health Plans, Inc., 182 F.R.D. 42, 51 (S.D.N.Y. 1998)*.

2000 U.S. Dist. LEXIS 5481, *; Fed. Sec. L. Rep. (CCH) P90,963

Page 5

n7 In In re Oxford Health Plans, Inc., the court noted that naming more than one lead plaintiff "allows for broad representation and the sharing of resources and experience to ensure that the litigation will proceed expeditiously . . . and will assure the Court that any settlement when proposed will be provident." *182 F.R.D. 42, 49 (S.D.N.Y. 1998)*. Judge Brient felt that the appointment of three lead plaintiffs avoided the possibility of a tie vote which would deadlock the plaintiffs on an important issue. *Id at p. 47*. This Court questions whether litigation can really proceed smoothly where one of three lead plaintiffs strongly objects to a particular course of action. Since DeValle and Green are considered as a single group, the structure established in this Order will require unanimity among the lead plaintiffs.

[*12]

10. Some courts have commented on the possible conflict of interest between class members who sold all or a portion of their shares before the action was filed ("In/Out Plaintiffs") and those who still own some or all of their stock ("Retention Plaintiffs"). See *In re Party City Sec. Litig., 189 F.R.D. 91, 108, 110 (D.N.J. 1999)*(discussing nature of conflict and holding that "the appointment of a group of lead plaintiffs consisting of both Retention Plaintiffs and In/Out Plaintiffs runs contrary to the goals of the PSLRA."). DeValle, Green and Connecticut are all Retention Plaintiffs. n8 Because the benefit of any verdict or settlement is, in effect, paid pro rata by all the shareholders (leaving aside the possible benefit of any available insurance coverage), while the benefits flow only to those who purchased shares during the class period, even a Retention Plaintiff will most often benefit from the litigation since the per share detriment will surely be less than the per share benefit. It may be that there exist persons who made large scale purchases before or after the class period but only small purchases during the class period who would be disadvantaged [*13] by the litigation. However, none of the proposed lead plaintiffs seems to fall into this category. n9

n8 Connecticut purchased 168,300 shares of Campbell stock during the class period adding to the 98,400 shares already owned. Sales both during and after the class period have reduced its holdings as of April 6, 2000, to 77,800 shares. DeValle purchased 5,302.2 shares during the class period adding to the approximately 20,000 shares already owned. DeValle still owns all of these shares. Green purchased 5,742 shares during the class period, and on the first trading day after the class period (January 11, 1999) purchased an additional 4,916.3 shares. Green has never sold any of his Campbell stock. Laborers Local purchased 6,300 shares during the class period adding to the 6,000 shares already owned. During the class period it sold 4,500 shares of its original 6,000. After the close of the class period, it sold all of its remaining shares so that it owns none at the present time.

n9

> We do not perceive any conflict of interest between those who have retained their ITT shares and those who have since sold them. The personal interest of those who still hold ITT stock in gaining more from the exchange than they did far outweighs their concern that any award could damage ITT.

*Herbst v. ITT, 495 F.2d 1308, 1314 (2d Cir. 1974); see also In re Oxford, 182 F.R.D. 42*.

[*14]

11. As noted earlier, it is the responsibility of the lead plaintiffs to select counsel, subject to court approval. The Court assumes from the oral argument that DeValle, Green and Connecticut filed their original motions to be appointed lead plaintiff with the intent that the counsel who filed the motions would also be class counsel should the motion be granted. However, the Court directs those who are appointed as lead plaintiffs to meet to discuss the issue of who should be named class counsel. When lead plaintiffs come

Case 1:05-cv-00081-GMS   Document 13-2   Filed 04/11/2005   Page 7 of 8

Page 6

2000 U.S. Dist. LEXIS 5481, *; Fed. Sec. L. Rep. (CCH) P90,963

to an agreement on this issue, a motion for approval should be served and filed. In deciding whether to approve the choice proffered by lead plaintiffs, the Court will consider the following:

(1) The fee arrangement agreed to by the parties should provide for a cap on fees, but leave to the Court the determination of the actual fee to be awarded; if more than one firm is going to be working on behalf of the plaintiffs, the method of allocating the fee award should be specified;

(2) The fee agreement should clearly specify how the out-of-pocket costs of the litigation will be funded, and what the obligations of the lead plaintiffs will be should [*15] the suit be unsuccessful;

(3) The motion should include information on how counsel plans to staff the matter, including the number of lawyers and paralegals to be involved, the breakdown between partners and associates and an estimate of the number of hours to be expended through various stages of the litigation. If lead counsel plans to parcel out the work to other law firms, the need for and extent of such delegation must be detailed in the motion papers. As noted earlier, the Court has serious reservations about this course of action. See P 8, supra.;

(4) If the lead plaintiffs plan to appoint co-counsel to represent them, the moving papers should set forth the reasons for appointing two law firms and the plans for allocating work between them. The Court will want to assure that the appointment of co-counsel does not result in waste and inefficiency in the prosecution of the action. It is very unlikely that the Court will consider the appointment of more than two firms as co-counsel for the lead plaintiffs;

(5) Starr, Gern, Davison & Rubin style themselves as "Liaison Counsel" in papers submitted to this Court in connection with the motions to appoint lead [*16] plaintiff. While the Court recognizes that if lead counsel does not maintain a New Jersey office it may be necessary under court rules to appoint local counsel, the role of such counsel should be carefully circumscribed to avoid duplication of services, wasted time and unnecessary expense;

(6) The motion to approve the appointment of lead counsel must be served and filed no later than May 15, 2000. The lead plaintiffs should be prepared to appear in person on the return date of the motion to offer testimony concerning the process used to select counsel and to answer questions from the Court relating to such selection.

Based on the foregoing,

**IT IS** on this 24th day of April, 2000,

**ORDERED THAT:**

2000 U.S. Dist. LEXIS 5481, *; Fed. Sec. L. Rep. (CCH) P90,963

1. Donald DeValle, Daryle Green, and Denise L. Nappier, Treasurer of the State of Connecticut as Trustee for the Connecticut Retirement Plans and Trust Funds are hereby appointed as lead plaintiffs in accordance with *15 U.S.C. § 78u-4(a)(3)(B)(i)*; and

2. The lead plaintiffs shall select lead counsel, subject to approval of this Court on motion, in accordance with *15 U.S.C. § 78u-4(a)(3)(B)(v)*, such motion [*17] to be served and filed no later than May 15, 2000; the hearing and oral argument on the motion shall be heard by the Court on Friday, May 19, 2000, at 2:00 p.m., in Courtroom 5A at the Mitchell H. Cohen United States Courthouse, One John F. Gerry Plaza, Camden, New Jersey.

JOSEPH E. IRENAS, U.S.D.J.