# EXHIBIT B

LEXSEE 1998 U.S. DIST. LEXIS 22867

STEVEN ZALTZMAN, et al., Plaintiff v. MANUGISTICS GROUP, INC., et al., Defendants; MICHAEL A. BERNSTEIN MONEY PURCHASE PLAN, et al., Plaintiff v. MANUGISTICS GROUP, INC., et al., Defendants; BRUCE MCCALL, et al., Plaintiff v. MANUGISTICS GROUP, INC., et al., Defendants; MEAD ANN KRIM, et al., Plaintiff v. MANUGISTICS GROUP, INC., et al., Defendants

Civ. No. S-98-1881, Civ. No. S-98-1944, Civ. No. S-98-2015, Civ. No. S-98-2050

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

*1998 U.S. Dist. LEXIS 22867*

**October 8, 1998, Decided**

**DISPOSITION:** [*1] Motion for consolidation pursuant to Rule 42(a) granted. Selection of Tydings & Rosenberg LLP as plaintiffs' liaison counsel approved.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff class members filed motions to consolidate the four pending actions against the defendants, a corporation, officer, and directors, seeking appointment of two class member groups together as lead plaintiffs, approval of the combined lead plaintiffs' selection of co-lead counsel, and approval of a partnership as plaintiffs' liaison counsel.

**OVERVIEW:** Because the four cases currently pending before the court involved nearly identical factual and legal issues, the court granted the motion for consolidation pursuant to Fed. R. Civ. P. 42(a). The court stated that despite the fact that no member of the class had objected to the arrangement of 92 lead plaintiffs asserting a wide range of losses, the proposed plan did not comport with the purpose of the Private Securities Litigation Reform Act of 1995 (PSLRA). The appointment of 92 lead plaintiffs, as proposed here, would have detracted from the PSLRA's fundamental goal of client control, as it would have inevitably delegated more control and responsibility to the lawyers for the class and made the class representatives more reliant on the lawyers. Based on the legislative purpose behind the enactment of the PSLRA, the court concluded that it would have been improper to appoint 92 class members as lead plaintiffs. The court approved the class members' selection of the partnership as plaintiffs' liaison counsel.

**OUTCOME:** The court granted in full the class members motions except for the appointment of two class member groups together as lead plaintiffs.

**LexisNexis(R) Headnotes**

**COUNSEL:** For STEVEN ZALTZMAN, plaintiff (98-CV-1881): John B. Isbister, Tydings and Rosenberg, Baltimore, MD.

For STEVEN ZALTZMAN, plaintiff (98-CV-1881): Steven G. Schulman, Milberg, Weiss, et al, New York, Ny.

For MICHAEL A. BERNSTEIN MONEY PURCHASE PLAN, consolidated plaintiff (98-CV-1881): John B. Isbister, Tydings and Rosenberg, Baltimore, MD.

For BRUCE MCCALL, consolidated plaintiff (98-CV-1881): Charles J. Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD.

For MEAD ANN KRIM, consolidated plaintiff (98-CV-1881): Lawrence Joseph Quinn, Tydings and Rosenberg, Baltimore, MD.

For MANUGISTICS GROUP, INC., WILLIAM M. GIBSON, PETER Q. REPETTI, defendants (98-CV-

1881): Richard S. Kraut, STORCH & BRENNER, LLP, Washington, DC.

For WILLIAM M. GIBSON, PETER Q. REPETTI, THOMAS A. SKELTON, KENNETH S. THOMPSON, JOSEPH H. JACOVINI, consolidated defendants (98-CV-1881): Richard S. Kraut, STORCH & BRENNER, LLP, Washington, DC.

For THOMAS A. SKELTON, JOSEPH H. JACOVINI, consolidated defendants (98-CV-1881): John B. Isbister, [*2] Tydings and Rosenberg, Baltimore, MD.

For KENNETH S. THOMPSON, JOSEPH H. JACOVINI, consolidated defendants (98-CV-1881): Charles J. Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD.

For MALIKO INVESTMENTS GROUP, interested party (98-CV-1881): William P. Butterfield, Law Office, Burton Finkelstein, Finkelstein, Thompson & Loughran, Washington, DC.

**JUDGES:** Frederic N. Smalkin, United States District Judge.

**OPINIONBY:** Frederic N. Smalkin

**OPINION:**

MEMORANDUM AND ORDER

### BACKGROUND

Currently pending before the Court are four separate class action lawsuits brought under the Securities Exchange Act of 1934 against Manugistics Group, Inc., and several of its officers and directors in their individual capacities. In each case, the plaintiffs assert violations of Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder by the SEC. Specifically, the actions point to a series of allegedly false and misleading public statements made by Manugistics' Chairman and Chief Executive Officer, William M. Gibson, during the varying class periods concerning the economic health of the company. The plaintiffs argue that Manugistics, Gibson, and certain [*3] officers and directors failed to disclose properly significant, underlying difficulties the company faced at the time the public statements were issued. The plaintiffs contend that the systematic concealment of problems associated with integrating a newly expanded sales force, increasing pressure from well-capitalized competitors, and management's distraction from core operations due to extensive review of possible acquisitions caused the market to overvalue Manugistics' stock. Thus, as a result of the defendants' actions, the plaintiffs each allege that they purchased Manugistics' stock at artificially high prices.

Subsequent to the filing of the four complaints, Plaintiff Steven Zaltzman, along with eighty-six other class members (collectively, "the Zaltzman group"), moved to have the actions consolidated. In addition, the Zaltzman group moved to have this Court appoint them as lead plaintiffs for the prosecution of the consolidated case and to approve their selection of lead counsel and liaison counsel. A second group, consisting of a general partnership, Maliko Investments, and four individual investors (collectively, "the Maliko group"), likewise filed a motion for appointment [*4] as lead plaintiffs and for approval of their selection of lead counsel. The two rivals have since formed an apparent merger, jointly amending their motions to: (a) consolidate the four pending actions against Manugistics; (b) seek appointment of the Zaltzman and Maliko groups together as lead plaintiffs; (c) approve the combined lead plaintiffs' selection of co-lead counsel, consisting of the law firms Milberg Weiss Bershad Hynes & Lerach LLP, Reinhardt & Anderson, Finkelstein, Thompson & Loughran, and Stull, Stull & Brody; and (d) approve Tydings & Rosenberg LLP as plaintiffs' liaison counsel. The Court will consider each of these points in turn. n1

> n1 Under *15 U.S.C. § 78u-4(3)(B)(ii)*, the Court must first decide whether the actions should be consolidated before considering the appointment of a lead plaintiff.

### CONSOLIDATION

*Rule 42(a) of the Federal Rules of Civil Procedure* provides:

> When actions involving a common question of law or fact are pending before the court, [*5] it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

The Fourth Circuit has stated that, under this rule, district judges "have broad discretion . . . to consolidate causes pending in the same district." *A/S J. Ludwig Mowinckles Rederi v. Tidewater Constr. Co., 559 F.2d 928, 933 (4th Cir. 1977)*. In addition, district courts should "make good

Case 1:05-cv-00081-GMS    Document 13-3    Filed 04/11/2005    Page 4 of 8

Page 3
1998 U.S. Dist. LEXIS 22867, *

use of Rule 42(a) . . . in order to expedite the trial and eliminate unnecessary repetition and confusion." *In re Air Crash Disaster at Florida Everglades on December 29, 1972, 549 F.2d 1006, 1013 (5th Cir. 1977)* (internal quotations omitted).

Securities actions provide particularly compelling opportunities for consolidation when "the complaints are based on the same 'public statements and reports.'" *Werner v. Satterlee, Stephens, Burke & Burke, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992)* (quoting *Lloyd v. Bio-Test Lab., Inc., 454 F. Supp. 807, 812 (S.D.N.Y. 1978)*). Recently, the United States [*6] District Court for the Southern District of New York found consolidation under Rule 42(a) proper when faced with four separate actions, each involving "claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934" and each alleging that the defendant corporation had "concealed information regarding its business practices" in a succession of SEC filings. *In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 292 (S.D.N.Y. 1998)*. Under both Werner and Olsten, it appears that consolidation also would be appropriate in the case at bar as "the plaintiffs in the four complaints rely upon the same series of allegedly false and misleading public statements and omissions" made by Mr. Gibson. *In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d at 293*.

Consolidation is not precluded in this case because of the varying class periods alleged in in the four cases. n2 In granting a motion for consolidation, the Olsten court noted that "although the class period in [the first complaint] begins before and ends during the class periods alleged in the other three actions, the allegations in the later three actions are based upon disclosures that concern [*7] facts common to all four actions." Id. See also *Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866, 1997 WL 461036, at *7 (N.D. Ill. Aug. 11, 1997)* ("The varying class periods . . . can nevertheless be harmonized because all of the complaints are based upon a common set of operative facts.").

> n2 The class period in the Zaltzman case runs from February 13, 1998 through May 22, 1998; in Bernstein, the class period extends from March 27, 1998 through June 9, 1998; and in both McCall and Krim, the class period is from February 13, 1998 until June 9, 1998.

In addition, consolidation is appropriate despite the fact that the named defendants are not identical in each case. n3 In *Waldman v. Electrospace Corp., 68 F.R.D. 281 (S.D.N.Y. 1975)*, the United States District Court for the Southern District of New York encountered three different suits alleging violations of federal securities laws related to a series of misrepresentations in a corporation's financial statements. After noting [*8] that the plaintiffs in one case raised a claim against four defendants not named in the other two actions, the court concluded that this fact did "not militate against a consolidated trial." *Id. at 284*. The court was persuaded that "enough common and related issues exist with respect to all claims to indicate that it would needlessly waste both time and manpower to require separate trials." Id. See also *Feldman v. Hanley, 49 F.R.D. 48, 50 (S.D.N.Y. 1969)* (finding that consolidation of cases with different defendants is appropriate where it allows for "trial convenience and economy of administration").

> n3 The Bernstein and Krim actions name only Manugistics Group, Inc. and its Chairman and Chief Executive Officer, William M. Gibson as defendants. In addition to those two defendants, the Zaltzman complaint names Peter Q. Repetti, Senior Vice President and Chief Financial Officer, as a third defendant. In McCall, the plaintiff has brought suit against the three previously named parties, as well as Thomas A. Skelton and Joseph A. Jacovini, directors of Manugistics Group, Inc. and Kenneth S. Thompson, a vice president.

[*9]

Because the four cases currently pending before the Court involve nearly identical factual and legal issues, the motion for consolidation pursuant to Rule 42(a) is hereby granted. As the Olsten court recently recognized, "'the resolution in one litigation of such common questions, relating to the existence, character and materiality of defendants' alleged misrepresentations is both a logical and appropriate way in which to proceed.'" *In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d at 294* (quoting *Waldman, 68 F.R.D. 281 at 283*). Consolidation of these four actions "would serve the purpose of avoiding needless duplication of time, effort and expense on the part of the parties and the court in the conduct of pretrial discovery proceedings and of the trial itself." *Fields v. Wolfson, 41 F.R.D. 329, 330 (S.D.N.Y. 1967)*. In addition, the Court is unaware of any issues which would lead to confusion of the issues or prejudice to any party once these cases are consolidated. See *Southwest Marine, Inc. v. Triple A Machine Shop, Inc., 720 F. Supp. 805, 807 (N.D. Cal. 1989)* ("To determine whether to consolidate, a court weighs [*10] the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation."). n4

Case 1:05-cv-00081-GMS    Document 13-3    Filed 04/11/2005    Page 5 of 8

1998 U.S. Dist. LEXIS 22867, *                                      Page 4

n4 In addition to the foregoing reasons favoring consolidation, the Court notes that there has been no opposition to this motion from any other party. See *Familienstiftung v. Askin*, 178 F.R.D. 405, 412 (S.D.N.Y. 1998) (remarking that the lack of opposition weighed in favor of the court's decision to grant motion to consolidate).

## APPOINTMENT OF LEAD PLAINTIFF

The process for selecting a lead plaintiff in this case is governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA" or "the Reform Act"), which was enacted in an attempt "to cure a variety of perceived abuses in the prosecution of . . . class actions which claim violations of the Federal securities laws." *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 1998 WL 420557, at *3 (D. Minn. 1998). Under the PSLRA, a court "shall appoint as lead plaintiff the member [*11] or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." *15 U.S.C. § 78u-4(a)(3)(B)(I)*. The act creates a "rebuttable presumption" that the most adequate plaintiff is "the person or group of persons that (aa) has either filed the complaint or made a motion in response to a [published] notice . . . (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of *Rule 23 of the Federal Rules of Civil Procedure.*" *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*. This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*.

In passing PSLRA, Congress addressed a system marred by "strike" lawsuits where the initiative for filing came "almost entirely [*12] from the lawyers, [and] not from genuine investors." S. Rep. No. 67, 104th Cong., 1st Sess. 2 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 685. The Senate committee report noted that in such cases, "lawyers typically relied on repeat, or 'professional,' plaintiffs who, because they had a token number of shares in many companies, regularly lent their names to lawsuits." Id. Courts would appoint lead plaintiffs and lead counsel on a first-come, first-serve basis in these cases, allowing attorneys whose clients had minimal interests to control the course of the litigation as long as they won "the race to the courthouse." Id. at 689. This enabled the proliferation of "frivolous" suits on behalf of nominal plaintiffs "alleging violations of the Federal securities laws in the hope that the defendants [would] quickly settle to avoid the expense of litigation."

Id. at 683. Not surprisingly, the negotiated settlements often "resulted in huge profits for the law firms with only marginal recovery for the shareholders." *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 544 (N.D. Tex. 1997).

As a result of these findings, "Congress sought to eliminate figurehead plaintiffs [*13] who exercise no meaningful supervision of litigation." *Ravens v. Iftikar*, 174 F.R.D. 651, 1997 WL 405110, at *6 (N.D. Cal. 1997). Through the enactment of the PSLRA, Congress attempted to "transfer primary control of private securities litigation from lawyers to investors" by creating the presumption that the class member with the largest economic interest in the case would serve as lead plaintiff. S. Rep. No. 67, 104th Cong., 1st Sess. 2 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 685. By establishing the class member with the largest financial stake as the presumptive lead plaintiff, Congress hoped to "encourage the most capable representatives of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class." H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 2 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 731. In light of these considerations, Congress thus endeavored to promote the active participation of institutional investors in these cases: "Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class [*14] more effectively than class members with small amounts at stake." Id. at 733.

Under the Joint Supplemental Motion filed by the Zaltzman and Maliko groups, there would be ninety-two lead plaintiffs asserting a wide range of losses. n5 Despite the fact that no member of the plaintiff class has objected to this arrangement, the proposed plan does not comport with the purpose of the PSLRA. It is clear from the statute and legislative history that Congress sought to empower a select group of investors to serve as lead plaintiffs in the prosecution of these actions. *Chill*, 181 F.R.D. 398, 1998 WL 420557 at *7. The PSLRA explicitly requires the presumptive lead plaintiffs to have "the largest financial interest" in order to ensure adequate motivation for active involvement and oversight of the attorneys representing the class. The aggregation of many unrelated smaller investors into one large group of lead plaintiffs, as proposed here, subverts this underlying purpose of the statute. While the members of this conglomeration collectively may have the largest financial interest, the individuals are less likely to have the incentive for zealous participation [*15] and interaction with class counsel, as their personal stakes in the outcome are smaller. The influence of those investors with significant losses would be diminished under such a scheme, and the result will be exactly what Congress had hoped to avoid: lawyer-driven litigation without

Case 1:05-cv-00081-GMS    Document 13-3    Filed 04/11/2005    Page 6 of 8

1998 U.S. Dist. LEXIS 22867, *                                     Page 5

meaningful guidance from the represented class members.

> n5 The Zaltzman group was comprised of eighty-seven members while the Maliko group included five proposed lead plaintiffs.

Thus, while the Court recognizes that the language of the statute permits both individual investors and groups of investors to serve as lead plaintiffs, n6 the goals of the PSLRA clearly would be compromised by allowing a hodgepodge of numerous smaller investors to serve as lead plaintiffs. The appointment of ninety-two lead plaintiffs, as proposed here, would "detract from the Reform Act's fundamental goal of client control, as it would inevitably delegate more control and responsibility to the lawyers for the class and make the class representatives more [*16] reliant on the lawyers." *Gluck*, 976 F. Supp. at 549. The Court notes, however, that "co-lead Plaintiffs might be appropriate in certain situations, such as two institutional investors with roughly equal economic losses in a particular case, or two or more smaller investors where there is no plaintiff with a significantly larger interest than all other plaintiffs." *Id.* at 549-50. n7

> n6 See *15 U.S.C. § 78u-4*(a)(3)(B)(iii)(I) (providing that a "person or group of persons" can serve as lead plaintiff).
>
> n7 At least one court has held that any aggregation of unrelated plaintiffs would defeat the purpose of choosing a lead plaintiff. *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997). The court concluded that "to allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation." *Id.* at 158.

The Zaltzman and [*17] Maliko groups, both separately in their individual memoranda and now together in their joint motion, rely on *In re Cephalon Sec. Litig.*, 1996 U.S. Dist. LEXIS 13492, 1996 WL 515203 (E.D. Pa. Aug. 27, 1996) for the proposition that a court can appoint a group of class members as lead plaintiffs. Specifically, the Cephalon court stated that "the Act does not preclude appointing more than one lead plaintiff," and, as a result, "plaintiffs' motion requesting the appointment of several lead plaintiffs does not violate the Act." *Id.* at *1. As noted above, this Court agrees that more than one investor can be appointed lead plaintiff under the PSLRA. However, the broadly worded holding in Cephalon should be read in light of the facts of that case. There, the court appointed four class members (contrasted with the ninety-two sought here) to serve as lead plaintiffs. In addition, the Cephalon opinion did not consider the underlying reasons for the passage of the Reform Act, or whether those ends would be undermined by the appointment of multiple lead plaintiffs.

Based on the legislative purpose behind the enactment of the PSLRA, the Court concludes that it would be improper to appoint ninety-two [*18] class members as lead plaintiffs. Although every plaintiff has an "undeniable interest in an outcome most favorable to his or her position, every warrior in this battle cannot be a general." *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 1998 WL 598337, at *4 (D.N.J. 1998).

In this case, the Court believes that the interests of the class would be best served through the appointment of Maliko Investments and Mark Doyle, a member of the Zaltzman group, as co-lead plaintiffs. See *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 1998 WL 400741, at *8 (S.D.N.Y. 1998) ("Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case.").

Maliko Investments is a general partnership consisting of approximately thirty partners and has allegedly suffered losses totaling $ 553,929. Maliko arguably qualifies as an institutional investor, and, in any event, it has incurred greater losses than any other single proposed lead plaintiff. Mr. Doyle has asserted estimated losses [*19] of $ 180,430, more than any other individual investor and arguably more than any one general partner of Maliko Investments. These parties have "the largest financial interest in the litigation" and thus "the most to gain from any marginal increase in dollars recovered per share." *In re Cendant Corp. Litig.*, 109 F. Supp. 2d 225, 1998 WL 598337 at *6. The heavy losses sustained by Maliko Investments and Mr. Doyle assumedly will provide the impetus for effective oversight of their counsels' performance, thereby fulfilling the purpose of the Reform Act. This goal can be more effectively attained without the possible dilution of control or confusion caused by the presence of numerous other proposed lead plaintiffs. n8

> n8 See *Chill*, 181 F.R.D. 398, 1998 WL 420557 at *7 (noting that a court "may exercise its supervisory authority to restrict" the number of lead plaintiffs where the proposed group would "unnecessarily complicate the proceedings").

In addition to [*20] having the "largest financial interest" in this case, Maliko Investments and Mr. Doyle also satisfy the requirements of Rule 23 as dictated by *15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)*. When appointing a lead plaintiff under the PSLRA, "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in 23(a)(3) and 23(a)(4), that is typicality and adequacy." *Fischler v. Amsouth Bancorporation, 1997 U.S. Dist. LEXIS 2875, 1997 WL 118429*, at *2 (M.D. Fla. Feb. 6, 1997). See also *Gluck, 976 F. Supp. at 546* (noting that "at this stage of the proceedings," a proposed lead plaintiff "need only make a preliminary showing that it satisfies [the typicality and adequacy] requirements").

This Court previously has stated that "the typicality requirement of Rule 23 addresses whether the representatives' claims and interests are in fact consistent and harmonious with the rest of the class." *Smith v. Montgomery County, 573 F. Supp. 604, 612 (D. Md. 1983)*. "Factual differences will not necessarily [*21] render a claim atypical if the representative's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class, and is based on the same legal theory." *Smith v. B & O R.R. Co., 473 F. Supp. 572, 581 (D. Md. 1979)*. Under these cases, Maliko Investments and Mr. Doyle unquestionably meet the typicality requirement. Their interests are clearly aligned with absent class members as *all* purported plaintiffs must establish damages under the standards set forth in Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 based on the same public statements and omissions by Mr. Gibson and other officers and directors of the company.

When assessing the adequacy of representation under Rule 23(a)(4), courts must "look to such factors as whether the representative[s'] interests are sufficiently identical to those of the absent class members so that [they] will diligently and vigorously pursue the claims of all of the members of the class; whether the representative[s'] counsel is competent to conduct the litigation; and whether there is an antagonism of interest between the named plaintiff[s] and members [*22] of the class." *Smith v. Montgomery County, 573 F. Supp. at 612-13*. Under the first consideration outlined in *Smith*, it is "unrealistic to assume that" Maliko Investments and Mr. Doyle, given the size of their losses, "would not travel every avenue that could potentially enhance their potential recovery. And in pursuit of their interests, [they] will necessarily seek to establish the elements of every plaintiff's claim. Under the circumstances, such self-interest of the presumptive lead plaintiffs will ensure adequacy of representation for all the class." *In re Cendant Corp. Litig., 109 F. Supp. 2d 225, 1998 WL 598337* at *4. In addition, Maliko Investments and Mr. Doyle have hired competent counsel to prosecute their claims, and the Court is unaware of any potential sources of conflict which could arise between the co-lead plaintiffs and the other members of the purported class.

Thus, Maliko Investments and Mark Doyle meet the requirements of the PSLRA for appointment as co-lead plaintiffs: they filed a timely motion with the court, n9 have the largest financial interest in the relief sought, and meet the requirements of Rule 23. *15 U.S.C. § 78u-4* [*23] *(a)(3)(B)(iii)(I)*. In addition, there is no evidence to rebut the fitness of these parties to serve as lead plaintiffs. *15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)*. As co-lead plaintiffs, they therefore will undertake the significant responsibility of monitoring the course of the litigation on behalf of the purported class.

> n9 Both the Maliko group and the Zaltzman group, of which Mr. Doyle was a member, filed motions for appointment as lead plaintiffs within the time period required by *15 U.S.C. § 78u-4(a)(3)(A)*.

In reaching this decision, the Court has attempted to implement the letter and spirit of the PSLRA. However, as the United States District Court for the District of Minnesota candidly stated:

> We acknowledge that, as a palliative, we do not suggest that our appointment process will guarantee Congress' goal that the Lead Plaintiffs, and not their legal counsel, will control the progress and proper disposition of their legal claims. All we can assure is [*24] that the Lead Plaintiffs and, correlatively, their Lead Counsel, are fully informed of our expectation that the will of Congress, as expressed in the FSLRA [sic], will be effectuated in the conduct of this litigation. If our expectation is unfulfilled, we are not powerless to act.

*Chill, 181 F.R.D. 398, 1998 WL 420557* at *12.

### APPOINTMENT OF LEAD COUNSEL AND LIAISON COUNSEL

Pursuant to *15 U.S.C. § 78u-4(a)(3)(B)(v)*, "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the

class." Accordingly, Maliko Investments and Mr. Doyle may select Milberg Weiss Bershad Hynes & Lerach LLP, Reinhardt & Anderson, Finkelstein, Thompson & Loughran, and Stull, Stull & Brody as co-lead counsel "provided that there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses." *In re Donnkenny Inc. Sec. Litig., 171 F.R.D. at 158.* The Court is confident that "in light of the experience of each of the firms, . . . they will work together to maximize recovery for the proposed class." *In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 50, 1998 WL 400741* [*25] at *9. In addition, the Court approves the selection of Tydings & Rosenberg LLP as plaintiffs' liaison counsel. They will assume responsibility for transmitting communications between the Court and counsel, keep counsel apprised of developments in the case and scheduling matters, and generally assist in coordination.

All the above so ORDERED, this 8th day of October, 1998.

Frederic N. Smalkin

United States District Judge